No. 23-1179

# In the
# United States Court of Appeals
# for the Sixth Circuit

◆

OAKLAND TACTICAL SUPPLY, LLC, et al.*,*

*Plaintiffs–Appellants*,

v.

HOWELL TOWNSHIP, MI,

*Defendant–Appellee*.

◆

Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 18-cv-13443

◆

**APPELLANTS' REPLY BRIEF**

◆

JOSEPH G.S. GREENLEE
FPC ACTION FOUNDATION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149
(916) 517-1665

MARTHA A. DEAN
LAW OFFICES OF MARTHA
A. DEAN, LLC
144 Reverknolls
Avon, CT 06001
(860) 676-0033

PETER A. PATTERSON
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
ppatterson@cooperkirk.com
*Counsel of Record*

ROGER L. MYERS
MYERS & MYERS, PLLC
915 N. Michigan Ave., Ste. 200
Howell, MI 48843
(517) 540-1700

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION ...............................................................................1

ARGUMENT .....................................................................................2

I.  The Township's restrictions infringe upon the right to train with firearms....2

II.  Plaintiffs have standing. ...............................................................7

III.  At the plain text level, this case presents the question whether the Second Amendment protects the right to train with common firearms. .....................8

IV.  Training with arms is covered by the plain text of the Second Amendment........................................................................11

    A.  Training is covered by "bear Arms," "well regulated," and "security of a free State" in the Second Amendment's plain text. .....................12

    B.  Training is protected by necessary implication...................................15

V.  Plaintiffs' use of history to confirm the meaning of the plain text follows the Supreme Court's approach in *Heller*. .......................................17

VI.  The Township's attempts to avoid its burden under *Bruen* fail. ..................20

VII.  Neither *Heller* nor *Bruen* was remanded for the government to provide additional historical evidence; the Township is not entitled to a *second* remand for that purpose. ...............................................................23

CONCLUSION .................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ................................................16

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . 4, 9, 12, 13, 14, 17, 18, 19, 22

*Dobbs v. Jackson Women's Health Organization*,
    142 S. Ct. 2228 (2022)....................................................................................20

*Drummond v. Robinson Twp. See* 9 F.4th 217 (3d Cir. 2021)......................7, 17, 21

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ..........................................21

*Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) ..........................................17

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966) ....................................21

*Luis v. United States*, 578 U.S. 5 (2016)................................................................15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...............................................16

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ........................................2, 26, 27

*Nat'l Rifle Ass'n, Inc. v. BATFE*, 714 F.3d 334 (5th Cir. 2013)........................21, 22

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*,
    354 F. Supp. 3d 143 (N.D.N.Y. 2018) ..........................................................25

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*,
    818 F. App'x 99 (2d Cir. 2020)....................................................................25

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)............................. 2, 11, 16, 17, 19, 20, 21, 22, 23, 25

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
    140 S. Ct. 1525 (2020)....................................................................10, 11, 22

*Parker v. District of Columbia*, 311 F. Supp. 2d 103 (D.D.C. 2004)...............25, 26

*Parsons v. Dep't of Just.*, 801 F.3d 701 (6th Cir. 2015)...........................................7

*Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023)....................................................22

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................16

*Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) ..................22

**Rule**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................25

**<u>Ordinance</u>**

HOWELL TOWNSHIP ZONING ORDINANCE § 16.18 (Apr. 2023),
    https://bit.ly/3PwmokZ ....................................................................................6

## INTRODUCTION

This case turns on the question of whether training with firearms is covered by the plain text of the Second Amendment. That is not a hard question. The Second Amendment protects the right to be armed *and ready* in case of confrontation. A person cannot be armed and ready without learning how to use a firearm. And the Amendment's prefatory clause indicates that a principal reason the Amendment was adopted is the importance of a populace well-trained in the use of arms. Against that backdrop, it would be nonsensical to hold that the Second Amendment does not extend to training. Finally, it is a commonplace of constitutional interpretation that constitutional rights encompass their necessary incidents. Just as the right to free speech would be burdened by a law restricting one's ability to receive instruction in the English language and the right to freely exercise religion would be burdened by a law restricting Bible study, the right to keep and bear arms is burdened by a law restricting firearms training.

The Township counters that the plain text does not cover *specifically* the type of training that Oakland Tactical plans to offer. The Township characterizes that training too narrowly, but that ultimately is of no moment. Either way, the conduct at issue is training with constitutionally protected firearms, and that conduct is covered by the Second Amendment's plain text.

Ordinarily under *Bruen*, the government may show that its restriction is consistent with the Nation's historical tradition of firearm regulation. But the Township waived that opportunity. Consistent with this Court's remand instructions, the district court specifically directed the Township to provide "historical evidence" to support its restrictions on training. Order at 2, R.E.No.96, PageID#2206 (brackets omitted). The Township instead argued only that the conduct at issue is not covered by the plain text. And now on appeal it has once again refused to address history in its brief. The Township has the obligation to justify its law historically, and it has refused do so, defying a court order in the process. Because "the Supreme Court's interpretation of the Second Amendment . . . compels" a ruling for Plaintiffs, this Court should reverse and order entry of judgment in favor of Plaintiffs on liability, entry of an injunction preventing the Township from applying its zoning ordinance to bar operation of Oakland's range, and further proceedings to calculate damages due to Plaintiffs. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

## ARGUMENT

I.    **The Township's restrictions infringe upon the right to train with firearms.**

A. At the outset, this Court must determine whether the plain text of the Second Amendment protects Plaintiffs' "proposed course of conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022). The proposed course of conduct here is training with protected firearms. The Township attempts to narrowly

frame the conduct as "Oakland's right to construct an outdoor, open air, 1,000-yard shooting range anywhere it chooses within the Township." Br. of Appellee Howell Township, MI, Doc. 19, at 24 (June 7, 2023) ("Township Br."); *see also id.* at 10, 21, 29, 30–31. But this misreads the operative complaint's allegations about Oakland's proposed conduct and entirely disregards Plaintiffs Jason Raines, Matthew Remenar, Scott Fresh, Ronald Penrod, and Edward George Dimitroff ("Training Plaintiffs").

The complaint is clear: but for the Township's restrictions on ranges, Oakland Tactical would use its property to "operat[e] one or more outdoor shooting ranges to provide a safe location for residents in the area to practice target shooting for self-defense and other lawful purposes." SAC ¶ 6, R.E.No.44, PageID#1085–86. More specifically, Oakland would use its land to operate ranges "including, *but not limited to* a long distance (e.g., 1,000 yard) range for qualified shooters *and* public access rifle, shotgun and handgun ranges." *Id*. (emphasis added). And Training Plaintiffs would engage in a broad array of training, including practicing at "a long-distance shooting range" and "target shooting at shorter distances" (Fresh), practicing "long-range" shooting as well as "target shooting for self-defense and other lawful purposes" (Raines and Remenar), practicing "with shotguns, rifles and pistols recreationally as well as for self-defense and other lawful purposes" (Penrod), and practicing generally with "shotguns" and "rifles" (Dimitroff). *See* SAC ¶¶ 7–15, 60–

64, R.E.No. 44, PageID#1086–90, 1101–02. Significantly, most of this training requires an outdoor range. *See id.* ¶ 14, PageID#1090 (explaining that Dimitroff can only practice with a handgun because he only has access to an indoor range).

B. The Township also frames the claimed right too broadly. Oakland does not seek to construct its ranges, and Training Plaintiffs do not seek to train, "anywhere [they choose] within the Township." Township Br. 24. Rather, Plaintiffs seek to "practise[ ] in safe places" the use of firearms, *District of Columbia v. Heller*, 554 U.S. 570, 619 (2008) (quoting B. Abbott, Judge and Jury 333 (1880)), including the ranges operated on Oakland's property. SAC ¶¶ 6, 11, 56, R.E.No.44, PageID#1085–86, 1088–89, 1100. The safe and controlled nature of Oakland's proposed operations is key, as "uncontrolled shooting occurring on other residents' properties" has caused Plaintiff Penrod to "fear[ ] for his family's safety and the safety of their animals." SAC ¶ 11, R.E. No. 44, PageID#1088. And in addition to potentially being unsafe, individual shooting on private property can also be burdensome, requiring shooters to "setup the targets on their own" and to "hike a significant distance from the firing line to the target location to change targets and tally scores." SAC ¶ 9, R.E.No. 44, PageID#1087.

C. Finally, the Township misidentifies the source of the burden on the right and the target of Plaintiffs' constitutional attack. Plaintiffs *are not* challenging the denial of "a text amendment that would allow [operation of Oakland's training

4

facilities] within the Township's AG-Residential District." Township Br. 16. While that proposed text amendment would have been a *solution* to the constitutional infirmities of Oakland's land use laws, its denial is not the *source* of those infirmities. Rather, the source of the infirmities is the "Howell Township Zoning Ordinance[ ] barring operation of shooting ranges open to the public," and it is that ordinance that Plaintiffs challenge here. *See* SAC Prayer for Relief ¶ 3, R.E.No. 44, PageID#1105.

The Township seeks to downplay the burden imposed by its zoning ordinance, claiming that as amended it would allow Oakland to "construct its desired range" in districts that "comprise approximately 30% of the area within the Township." Township Br. 12. But this is an incomplete assessment of the relevant legal and factual landscape. The amendments do not address Plaintiffs' claims for damages caused by the version of the ordinance that was in place at the time this suit was filed. *See* SAC Prayer for Relief ¶ 2, R.E.No. 44, PageID#1104. Plaintiffs have consistently alleged that the unamended ordinance operated as a de facto ban on outdoor ranges in the Township. *See* Appellants' Opening Brief, Doc. 14, at 6–7 (Apr. 24, 2023) ("Br."). And a ban on outdoor ranges is a ban on effective long gun training. *See* SAC ¶ 14, R.E.No. 44, PageID#1090 (alleging that Plaintiff Dimitroff can only practice with a handgun because he only has access to an indoor range). Moreover, Plaintiffs do not concede that the amendments remove the de facto ban

on outdoor shooting ranges that allow target distances appropriate for training with common firearms. The first set of amendments as a practical matter still would bar an outdoor range operation like Oakland's from much if not all the land where such a range theoretically would be permitted. *See* Oakland Supp. Br., *Oakland Tactical Supply, LLC v. Howell Twp., MI*, No. 21-1244 (6th Cir. Nov. 22, 2021), Doc. 37; HOWELL TOWNSHIP ZONING ORDINANCE No.285 §§ 16.18(B)(10)(e)–(f), R.E.No.97-2, PageID#2249. And that the Township has done nothing to explain why the practicalities would be any different under the second set of amendments. *See* HOWELL TOWNSHIP ZONING ORDINANCE § 16.18 (Apr. 2023), https://bit.ly/3PwmokZ. In any event, under *all* versions of the ordinance Oakland is not allowed to operate a commercial outdoor range on *its* land, where its ranges could otherwise be safely operated, and the Township cannot justify *that* restriction.

The Township claims that the reason Oakland's operation is barred is because it wants to keep "commercial uses" away from "residential land use districts." Township Br. 9. But that argument is belied by the Township's zoning ordinance, which permits commercial operations such as agribusinesses and airports within districts like Oakland's that are zoned Agricultural Residential. HOWELL TOWNSHIP ZONING ORDINANCE § 4.03 (Mar. 2019), R.E.No.61-2, PageID#1369. The Township confirms that it is the commercial nature of *Oakland's* plans that bars it from operating on its land, as the *training* Oakland plans to offer would not be barred by

6

the ordinance—just conducting that training in the context of a safe, controlled, commercial range. *See* Township Br. 12. There are no "deep historical foundations" for "prohibitions on the commercial operation of gun ranges in areas where they were otherwise allowed." *See Drummond v. Robinson Twp.*, 9 F.4th at 227–28 (3d Cir. 2021).

## II.    Plaintiffs have standing.

Having cleared away confusion about the nature of this dispute, before reaching the merits we must pause to address the Township's erroneous standing argument. Standing has three elements—a concrete and particularized injury that is actual or imminent, a causal connection between the injury and the challenged conduct, and a likelihood that a favorable decision will redress the injury. *See, e.g.*, *Parsons v. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015). Here, the Township's zoning ordinance bars operation of Oakland's ranges. That prohibition injures all Plaintiffs: Training Plaintiffs by restricting their opportunities for range training, and Oakland by prohibiting it from operating its business. Causation and redressability follow—the ordinance causes the injury, enjoining it would relieve that injury moving forward, and awarding damages would provide redress for past harm.

The Township says that the district court implicitly questioned Plaintiffs' standing by stating that " 'The proposed conduct could not simply be "training with firearms" because the zoning ordinance does not prohibit "training with firearms." '

" Township Br. 48. But this is not a standing point, it is a merits point, as demonstrated by its placement in the district court's opinion. *See* Op. at 8, R.E.No.117, PageID#2632. The Township argues that there can be no injury if the conduct in question is training with firearms in common use because the Township does not altogether ban training with firearms in common use. *See* Township Br. 49. But this is mixing the concept of injury with the scope of the restriction being challenged. It is undisputed that the Township's ordinance bars Oakland from operating its ranges. There is some dispute about the extent to which the Township's ordinance effectively bars commercial range training throughout the Township, but that at most would bear on whether the ordinance is constitutional, not whether Plaintiffs have standing to challenge it or to raise any argument against its validity.

## III. At the plain text level, this case presents the question whether the Second Amendment protects the right to train with common firearms.

The Township argues that the relevant conduct for purposes of *Bruen*'s plain text analysis is "Oakland's right to construct an outdoor, open air, 1,000-yard shooting range." Township Br. 24. And the Township argues that this conduct is not protected by the plain text of the Second Amendment even if some type of training is protected. As an initial matter, as explained above, the Township characterizes the conduct in which Oakland and the Training Plaintiffs wish to engage too narrowly.

More importantly, the Township's argument fundamentally misunderstands *Bruen's* plain text analysis.

Perhaps the best way to illustrate the error is to begin with an example that should be uncontroversial. In *Heller*, the Supreme Court considered whether the District of Columbia's ban on handguns violated the Second Amendment. Starting with the plain text, the Court determined that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." 554 U.S. 570, 582 (2008). As a matter of plain text, then, whenever a restriction of a type of weapon is at issue, the question is whether the weapon is a bearable arm. Because handguns (at issue in *Heller*) are bearable arms, the plain text of the Second Amendment covered the conduct in question.

Here, Plaintiffs argue that the plain text of the Second Amendment covers training with the arms that Americans have the right to possess and use. The Township disagrees, and that disagreement will be addressed below, but for the sake of this argument that disagreement is not important. The conduct in question is, as Plaintiffs would have it, the full scope of training activities Oakland plans to offer or, as the Township would have it, practicing at a 1,000-yard commercial range. The distinction ultimately is immaterial because under either conception the conduct in question involves training with commonly possessed arms and therefore is protected by the plain text of the Second Amendment. In other words, *if* training with

9

commonly possessed firearms generally is covered by the plain text of the Second Amendment, *it follows that* the conduct at issue in this case is covered by the plain text of the Second Amendment, because that conduct involves training with common firearms. It is incoherent to argue that even if training with commonly possessed firearms is covered by the Second Amendment, the conduct at issue in this case nevertheless is not covered.

Further support is provided by Justice Alito's dissent in *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525 (2020). That case involved a challenge to a New York City rule that prohibited transportation of firearms to shooting ranges outside the City. The Court held that the case had been mooted by a later-enacted State law. Justice Alito, joined by Justices Gorsuch and Thomas, dissented, arguing that the case was not moot and reaching the merits. Justice Kavanaugh, while joining the majority, expressed that he "agree[d] with Justice Alito's general analysis of *Heller*." 140 S. Ct. at 1527 (Kavanaugh, J., concurring). So, four members of the Court—all members of the *Bruen* majority—agreed with Justice Alito's treatment of *Heller*, and not one disagreed.

Justice Alito began by positing that "a necessary concomitant" of "the right to keep a handgun in the home for self-defense" is the right "to take a gun to a range in order to gain and maintain the skill necessary to use it responsibly." *Id*. at 1541 (Alito, J., dissenting). And because range training is a necessary concomitant of the

right to possess a handgun, it followed that it was "incumbent on the City to justify the restrictions its rule imposes," including with "evidence of laws in force around the time of the adoption of the Second Amendment." *Id*. To put it in the language of *Bruen*, as a matter of plain text the Second Amendment protects training; the City's rule restricted training by limiting where individuals could transport firearms for training; and therefore, the burden fell upon the City to justify its restriction with historical regulations. This is precisely the analysis that should apply here.

In contrast, the Township attempts to inject inquiry into limitations on the scope of the right to train into the textual analysis, instead of in the historical analysis where it belongs. The Township presumably does so because it is seeking to avoid having to meet its burden to justify its restriction with historical evidence, but the *Bruen* test cannot be manipulated in that way. Because the Second Amendment protects a general right to train with protected firearms, the Township's restrictions on that right are unconstitutional unless the Township can show that they are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

## IV.  Training with arms is covered by the plain text of the Second Amendment.

The Township claims that "Oakland concedes in its Open Brief [*sic*] that they seek a right beyond the plain text—one they argue can be assumed or implied by necessity." Township Br. 17. To the contrary, Plaintiffs argue that "the Second

Amendment, as a matter of plain text *and* necessary implication, protects a general right to train with the common firearms whose possession and use the Second Amendment protects." Br. 22–23 (emphasis added). That is, the right to train is covered by *both* the Second Amendment's express text *and* by necessary implication.

### A. Training is covered by "bear Arms," "well regulated," and "security of a free State" in the Second Amendment's plain text.

Under *Heller*, courts "begin [the] textual analysis with the operative clause" and "return to the prefatory clause to ensure that [its] reading of the operative clause is consistent with the announced purpose" in the prefatory clause. 554 U.S. at 578. The "requirement of logical connection" between the two clauses allows the "prefatory clause to resolve an ambiguity in the operative clause." *Id.* at 577.

Beginning with the operative clause, *Heller* held that to "bear arms" means to be "armed *and ready* for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584 (emphasis added). To be ready for an armed confrontation one must be trained in the use of the arm in question, which means that the Second Amendment must support a right to train. This dovetails with *Heller*'s recognition that the Second amendment must protect the right to an *operable* firearm. *See* Br. 22; Township Br. 36. Just as an inoperable firearm is

useless for self-defense, a firearm that a person does not know how to use has limited defensive utility.

*Heller* additionally used a training reference ("Servants and labourers shall use bows and arrows on Sundays, & c. and not bear other arms") to demonstrate that "bear arms" applies in "nonmilitary contexts." 554 U.S. at 581, 587–88 (quoting 1 Timothy Cunningham, A NEW AND COMPLETE LAW DICTIONARY (1771) (unpaginated)); *see also* Br. 20–21. The Township responds that "*Heller* did not hold or use this [Cunningham's] dictionary to show that a right to a shooting range or even a broader right to train falls within the normal or ordinary meaning of 'Bear Arms,' in the operative clause." Township Br. 34. But the notion that the Supreme Court used a training reference to demonstrate that the right to bear arms is not limited to the military yet did not suggest that the right to bear arms includes training "is worthy of the Mad Hatter." *Heller*, 554 U.S. at 589.

According to the Township, because "the meaning of the term 'arms' remains central to analyzing an individual's specific rights," " 'to keep and bear Arms' cannot be construed … to include … the right to train with firearms." Township Br. 29–30. After all, the Township proclaims, "[n]o court has ever held that an outdoor, open-air, 1,000-yard shooting range is an actual 'arm' or 'instrument' that constitutes 'bearable arms,' " and "one cannot 'bear,' or carry an outdoor, 1,000-yard shooting range" Township Br. 30. True enough, but irrelevant. The point is not

13

that a firing range *is* an arm, but rather that the right to keep and bear arms includes the right to train with arms.

To the extent any ambiguity exists, the prefatory clause resolves it in Plaintiffs' favor. *Heller* determined that "the adjective 'well-regulated' implies nothing more than the imposition of proper discipline and *training*." 554 U.S. at 597 (emphasis added); Br. 23–24. And *Heller* determined that "the militia was thought to be 'necessary to the security of a free State'" because "when the able-bodied men of a nation are *trained in arms* and organized, they are better able to resist tyranny." 554 U.S. at 597–98 (emphasis added); Br. 23. Thus, *Heller*'s and Plaintiffs' "interpretation of 'the right of the people to keep and bear arms' furthers the purpose of an effective militia" by recognizing the right to train. 554 U.S. at 578 n.4. The same cannot be said for the Township's interpretation that would allow all training to be banned.

Unable to answer *Heller*'s reading of the prefatory clause, the Township claims that "Oakland concedes that no ambiguity exists in the operative clause; thus, there is no need to use the prefatory clause to determine any expanded meaning of the Operative Clause." Township Br. 29 n.10; *see also id.* at 37. But we are arguing both that the operative clause plainly protects training and, in the alternative, to the extent there is ambiguity the prefatory clause resolves the question in our favor.

14

**B.   Training is protected by necessary implication.**

As our brief explained, *see* Br. 19–23, Justice Thomas's concurrence in *Luis v. United States* opined that because "constitutional rights necessarily protect the prerequisites for their exercise," "[t]he right to keep and bear arms … implies a corresponding right … to acquire and maintain proficiency in their use." Br. 1, 19 (quoting *Luis v. United States*, 578 U.S. 5, 25–26 (2016) (Thomas, J., concurring in judgment)).

The Township argues that the Supreme Court has not recognized implied Second Amendment rights and suggests that Justice Thomas has since changed his mind about the Second Amendment protecting them, because *Bruen* did not "recognize[] that an implied, corresponding right is a plain text right under the Second Amendment." Township Br. 35. Of course, implied rights were not addressed in *Bruen* because they were not at issue in that case. And far from backing down from *Luis*, Justice Thomas adhered to it by joining Justice Alito's dissent in *City of New York*, which, as explained above, recognizes that the right to keep and bear arms necessarily entails a right to train. Nothing in *Bruen* undermines this analysis, which is unsurprising since it was endorsed by four of the six members of the *Bruen* majority.

By arguing against the existence of necessarily implied rights, *see* Township Br. 36, the Township takes the radical position that if something is not within the

narrowly construed words of the Second Amendment's text, it is entirely unprotected. But constitutional rights are not construed so narrowly. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word."); *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (Fourth Amendment "protect[s] certain expectations of privacy as well"). Thus, contrary to the Supreme Court's instruction, the Township is asking this Court to treat the Second Amendment as a "second-class right" to be "singled out for special—and specially unfavorable—treatment." *McDonald v. City of Chicago*, 561 U.S. 742, 778–79, 780 (2010). Indeed, the Township's interpretation would allow for prohibitions on acquiring firearms, having firearms repaired, or training with firearms. This interpretation requires reading *Bruen* as marking a significant restriction of the Second Amendment's protections. But *Bruen* makes clear this is not the case.

Indeed, *Bruen* did nothing to undercut the decisions of courts that had held before *Bruen* that the Second Amendment protects training. While *Bruen* invalidated the two-step test that had allowed courts to balance away Second Amendment rights, it recognized that the first step of that test—in which courts "ascertain[ed] the original scope of the right based on its historical meaning"—"is broadly consistent

with" *Bruen*. 142 S. Ct. at 2126, 2127. And it is at the first step courts had found training to be protected.

The Seventh Circuit held that training fell within the historical scope of the right because the "individual right of armed defense . . . includes a corresponding right to acquire and maintain proficiency in firearm use through target practice at a range." *Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017) (citation omitted). The Third Circuit followed suit, finding the Second Amendment covers "training with common weapons in areas where firearms practice was otherwise permitted," including at for-profit commercial operations. *Drummond*, 9 F.4th at 227. *Bruen* did nothing to undermine these holdings, which support Plaintiffs here.

## V.   Plaintiffs' use of history to confirm the meaning of the plain text follows the Supreme Court's approach in *Heller*.

Plaintiffs followed *Heller*'s approach to analyzing the Second Amendment's plain text. While the Township concedes that "the Supreme Court in *Heller*, further adopted by *Bruen* … confirmed with certain history the conclusion of how the textual elements were defined," Township Br. 33, the Township objects to Plaintiffs' use of the very same history.

"To confirm its plain text analysis, *Heller* consulted state constitutions." Br. 12; *see Heller*, 554 U.S. at 600–01. Indeed, of all the "founding-era sources" *Heller* reviewed, the Court deemed the "state constitutional provisions written in the 18th

17

century or the first two decades of the 19th" as "those most relevant to the Second Amendment." *Id.* at 584. Thus, Plaintiffs emphasized that "[t]he constitutions of Virginia, Pennsylvania, and Vermont all ensured that the people be trained." Br. 12–13, 24–25. The Township argues in response that "[t]he Supreme Court did not hold in *Heller* that state constitutions' texts create either a right to operate an outdoor 1,000 yard, shooting range, or even more generally a right to train with firearms." Township Br. 38. But *Heller* "looked to state constitutions to confirm its interpretation of the plain text," and here, "[s]tate constitutions confirm that the Founders understood that the people must be trained to effectively defend themselves." Br. 24 (citing *Heller*, 554 U.S. at 600–03).

After reviewing state constitutions, *Heller* reviewed "the drafting history of the Second Amendment—the various proposals in the state conventions and the debates in Congress." 554 U.S. at 603. The Township argues that *Heller* only addresses this particular drafting history to attack Justice Steven's [*sic*] interpretation of the historical record." Township Br. 39. But *Heller* "assum[ed] that this legislative history [was] relevant," and determined that it supported the majority's plain text interpretation. 554 U.S. at 603–04.

The Township further contends that "[t]his Court should give no weight to any of the discussions from the Federalists and Antifederalists, provided by Oakland, as none of those discussions or history were used to confirm the Court's textual

meaning in *Heller*." Township Br. 40. But *Heller* did not suggest that any historical sources were out of bounds. And *Heller* quoted The Federalist No. 46 in defining "well regulated militia." 554 U.S. at 595. And *Heller* cited the Antifederalist essay *Brutus III*, in addition to The Federalist No. 29, in defining "security of a free State." 554 U.S. at 597, 598. *Heller* also consulted the "ratification debates" to determine whether "the preface fit[s] with an operative clause that creates an individual right to keep and bear arms." 554 U.S. at 598. In its discussion, the Court examined "Antifederalist rhetoric" as well as how the "Federalists responded." *See* 554 U.S. at 598–99. The statements of the Federalists and Antifederalists informed the Court's conclusion that "[i]t was understood across the political spectrum that the right [to keep and bear arms] helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down." *Id.* at 599. Plaintiffs make the same argument here: "both Federalists and Antifederalists agreed that an armed and trained populace was the best defense against a tyrannical government." Br. 26.

Finally, because "the Second Amendment ... codified a pre-existing right," the Supreme Court "survey[ed] English history dating from the late 1600s, along with American colonial views leading up to the founding." *Bruen*, 142 S. Ct. at 2127. Plaintiffs did the same. Br. 31–44.

## VI.  The Township's attempts to avoid its burden under *Bruen* fail.

Once it is established that conduct is covered by the Second Amendment's plain text, the government has the burden to demonstrate that its regulation of that conduct "is consistent with the Nation's historical tradition of firearm regulation. 142 S. Ct. at 2129–30 The Township repeatedly seeks to evade this burden, but attempts fail.

First, the Township argues that if ancillary rights exist, "this Court should hold that ancillary rights only arise where the Township has placed an undue burden on an act that is necessary to conduct the textual elements of the Second Amendment's operative clause." Township Br. 18. But the Second Amendment's plain text does not change depending on the severity of a regulation's burden on the conduct it covers. The only question is whether "the Second Amendment's plain text covers [the] conduct." *Bruen*, 142 S. Ct. at 2129. The Court last term eliminated one "arbitrary 'undue burden' test," *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2266 (2022); it did not create another in *Bruen*.

Second, the Township argues that "Oakland fails to allege how the Township's Zoning Ordinance places any significant burden upon their ability to exercise ancillary rights to train with firearms." Township Br. 45. But, again, the significance of the burden is irrelevant when determining whether conduct is covered by the plain text. It is the historical inquiry that entails asking "whether

modern and historical regulations impose a comparable burden" and "whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2133. *See also Drummond*, 9 F.4th at 229 (rejecting invitation to incorporate an assessment of burden into step one of the pre-*Bruen* framework).

What is more, the Township's *reasons* for seeking to discount the burden are dubious. The Township argues that individuals can train "outdoors on private property," just not at a commercial range. Township Br. 45. But this does nothing for individuals who do not own (or know someone who owns) private property appropriate for such training. "[L]ines drawn on the basis of . . . property" have no more place in the context of Second Amendment rights than they do in the context of voting rights. *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 668 (1966). The Township argues that individuals can train "at nearby indoor and outdoor ranges" outside of the Township. Township Br. 45. But it is "profoundly mistaken" to "assume[ ] that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction." *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011). The Township argues that individuals can train at "any range constructed and operated in any of the four land use districts that allow for such ranges." Township Br. 45. But no such range exists. And in any event, "restating the Second Amendment right in terms of what IS LEFT after the regulation rather than what EXISTED historically . . . is exactly backward from

21

*Heller*'s reasoning." *Nat'l Rifle Ass'n, Inc. v. BATFE*, 714 F.3d 334, 346 (5th Cir. 2013) (Jones, J., dissenting). The Township finally says that people could "use simulators and other calibers of long guns." Township Br. 45. But if training with a rented firearm is insufficient because "each individual gun may have its own characteristics," *City of New York*, 140 S. Ct. at 1541 (Alito, J., dissenting), so is training with a gun of an entirely different caliber or using a simulator.

Third, the Township contends that "*Heller* further held that not all longstanding regulatory measures are presumptively unlawful, including 'laws imposing conditions and qualifications on the commercial sale of arms.' That list is not exhaustive and supports upholding zoning regulations." Township Br. 28–29 (quoting *Heller*, 554 U.S. at 626–27 & 627 n.26). First, this was not *Heller*'s holding. *See Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 686 (6th Cir. 2016) (en banc). Second, the Township offers no evidence that zoning regulations of the type at issue here are "longstanding." *See id.* at 687; *Range v. Att'y Gen.*, 69 F.4th 96, 104 (3d Cir. 2023) (en banc). Third, *Bruen* clarified that *Heller*'s "presumptively lawful" language has no doctrinal significance—it was merely a prediction of what laws might be upheld under the one test that applies to all Second Amendment restrictions. When *Bruen* set forth "*the* standard for applying the Second Amendment," 142 S. Ct. at 2129 (emphasis added), it left no room for a presumption of a firearm regulation's lawfulness. Instead, the Court emphasized that "[*o*]*nly if* a

firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 2126 (quotation omitted).

**VII. Neither *Heller* nor *Bruen* was remanded for the government to provide additional historical evidence; the Township is not entitled to a *second* remand for that purpose.**

Once the Court determines that the plain text covers training, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

The Township again hopes this Court will diverge from Supreme Court precedent by asking the Court to refrain from holding the Township to its burden and remand once more so it can provide historical evidence. Indeed, the Township claims "[i]t is astounding what Oakland seems to be asking this Court to do by inviting it to address the second prong in *Bruen* in the event it reverses the District Court on the first prong." Township Br. 51 n.23. The Township makes this claim despite knowing the burden *Bruen* places on it and already having passed up several opportunities to provide historical evidence.

The Supreme Court decided *Bruen* while this case was before this Court. This Court then remanded after determining that "[w]e are unable to apply this [*Bruen*] standard based on the record and arguments currently before us," and instructed the district court, in the event that the plain text covers the proposed conduct, to

23

"determine whether historical evidence—*to be produced by the Township in the first instance*—demonstrates that the Ordinance's shooting-range regulations are consistent with the nation's historical tradition of firearm regulation." Unpublished Op., *Oakland Tactical Supply, LLC v. Howell Twp., MI*, Doc. 43-2, at 4–5 (6th Cir. Aug. 5, 2022) ("6th Cir. Op.") (emphasis added). The district court, accordingly, ordered the Township to brief "whether historical evidence—*to be produced by the Township in the first instance*—demonstrates that the Howell Township Ordinance's shooting regulations are consistent with the nation's historical tradition of firearm regulation." Order, R.E.No. 96, PageID.2206 (quotation marks and brackets omitted).

The Township thus knew that *Bruen* requires it to justify its regulation with historical evidence, that this Court remanded so the Township could produce a record and arguments consistent with *Bruen*, and that the Township was instructed to produce "historical evidence … *in the first instance*." 6th Cir. Op. 5; Order, R.E.No. 96, PageID.2206 (emphasis added). Yet the Township declined to produce historical evidence and instead depended entirely on winning at the plain text stage of the analysis. The Township, consequently, has waived its opportunity to produce historical evidence.

The Township claims that "Oakland's assertion that '*Bruen* did not give New York repeated opportunities to supplement the record' completely overlooks that the

proposed course of conduct in that case was 'undisputed' and a plethora of history was presented by the respondents." Township Br. 55 n.26 (citing Br. 30).

In fact, no record development occurred in *Bruen* because the plaintiffs filed a lawsuit that was foreclosed by circuit precedent and the district court entered judgment against the plaintiffs for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143, 145 (N.D.N.Y. 2018). The Second Circuit affirmed in a one-page summary order with no analysis. *New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 818 F. App'x 99, 100 (2d Cir. 2020). The Supreme Court nevertheless rejected the argument that it should remand to "giv[e] respondents the opportunity to develop an evidentiary record" because the case did not turn on disputed factual questions. *Bruen*, 142 S. Ct. at 2135 n.8. *Bruen* also emphasized that courts "are not obliged to sift the historical materials for evidence to sustain" the challenged law, *id.* at 2150, because courts are "entitled to decide a case based on the historical record compiled by the parties," *id.* at 2130 n.6. The Court's refusal to remand for additional historical evidence is significant considering that *Bruen* applied "a test rooted in the Second Amendment's text, as informed by history" that the lower courts did not apply. *Id*. at 2127.

*Heller*, like this case, was on review of a grant of a motion to dismiss. *See Parker v. District of Columbia*, 311 F. Supp. 2d 103, 109 (D.D.C. 2004) (granting

motion to dismiss and denying motion for summary judgment as moot). The *Heller* Court foreclosed additional findings by the lower courts even though the parties were unaware that the Court would apply a text and history test, and even though the Solicitor General specifically requested a remand. *See* Br. for the United States as Amicus Curiae, *District of Columbia v. Heller*, 2008 WL 157201, at *27–32 (D.C. Cir. Jan. 11, 2008).

Here, as in *Bruen*, there are no issues of fact that require remand—it is undisputed that all versions of the Township's ordinance forbid Plaintiffs' desired training at Oakland's range. Moreover, the Township, unlike the *Heller* and *Bruen* parties, is fully aware of the applicable test and was expressly directed to provide historical evidence by two courts. The Township does not claim that it did not have an opportunity, that it has not been afforded enough time, or that it would be too difficult—it simply declined to offer any evidence.

The result we are asking for here is not unprecedented. Indeed, it is akin to that granted by the Seventh Circuit in *Moore*, sitting in review of two district court decisions dismissing a challenge to Illinois's law barring carrying firearms in public. The court acknowledged that "the usual consequence of reversing the dismissal of a suit . . . is to remand the case for evidentiary proceedings," 702 F.3d at 942, but this was not a typical case. Because Illinois "failed to meet [its] burden" to justify the ban, "the Supreme Court's interpretation of the Second Amendment . . .

compel[led]" the Court "to reverse the decisions in the two cases before us and remand them to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions." *Id.* The Township waived its opportunity to produce historical evidence and is not entitled to a second remand for that purpose—all while running up Plaintiffs' legal expenses, lost income, and the duration of the violation of Plaintiffs' fundamental Second Amendment rights.

### CONCLUSION

For the foregoing reasons, the district court's judgment granting the Township's motion to dismiss should be reversed and the court should order entry of judgment in favor of Plaintiffs on liability, entry of an injunction preventing the Township from applying its zoning ordinance to bar operation of Oakland's range, and further proceedings to calculate damages due to Plaintiffs.

Dated: June 28, 2023                    Respectfully submitted,

/s/ *Peter A. Patterson*
PETER A. PATTERSON
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
ppatterson@cooperkirk.com
*Counsel of Record*

JOSEPH G.S. GREENLEE
FPC ACTION FOUNDATION
5550 Painted Mirage Rd., Ste. 320

Las Vegas, NV 89149
(916) 517-1665
jgreenlee@fpclaw.org

MARTHA A. DEAN
LAW OFFICES OF MARTHA
A. DEAN, LLC
144 Reverknolls
Avon, CT 06001
(860) 676-0033
mdean@mdeanlaw.com

ROGER L. MYERS
MYERS & MYERS, PLLC
915 N. Michigan Ave., Ste. 200
Howell, MI 48843
(517) 540-1700
rmyers@myers2law.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellants' Reply Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a). The brief is prepared in 14-point Times New Roman font, a proportionally spaced typeface; it is double-spaced; and it contains 6,500 words (exclusive of items listed in Rule 32(f)), as measured by Microsoft Word.

/s/ *Peter A. Patterson*
PETER A. PATTERSON
*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I certify that on June 28, 2023, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ *Peter A. Patterson*
PETER A. PATTERSON
*Counsel for Appellants*

30