No. 23-1179

# In the United States Court of Appeals
# for the Sixth Circuit

◆

OAKLAND TACTICAL SUPPLY, LLC, et al.*,*

*Plaintiffs-Appellants*,

v.

HOWELL TOWNSHIP, MI,

*Defendant-Appellee.*

◆

Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 18-cv-13443

◆

**PETITION FOR REHEARING EN BANC**

◆

JOSEPH G.S. GREENLEE
GREENLEE LAW, PLLC
PO Box 4061
McCall, ID 83638
(208) 271-2494
joseph@greenlee.law

MARTHA A. DEAN
LAW OFFICES OF MARTHA
A. DEAN, LLC
144 Reverknolls
Avon, CT 06001
(860) 676-0033

PETER A. PATTERSON
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
ppatterson@cooperkirk.com

ROGER L. MYERS
MYERS & MYERS, PLLC
915 N. Michigan Ave., Ste. 200
Howell, MI 48843
(517) 540-1700

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellants submit this corporate disclosure and financial interest statement.

Oakland Tactical Supply, LLC is a nongovernmental corporate party organized and existing under the laws of Michigan with a principal place of business in Hartland Township, Michigan. Oakland Tactical Supply, LLC has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

/s/ *Peter A. Patterson*
PETER A. PATTERSON
*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT..........................................................i

TABLE OF AUTHORITIES ....................................................................... iii

RULE 35 STATEMENT ............................................................................ 1

INTRODUCTION .................................................................................... 1

BACKGROUND ....................................................................................... 3

I.  Factual Background ............................................................... 3

II.  Procedural Background .......................................................... 4

ARGUMENT ........................................................................................... 5

I.  The Panel Opinion Conflicts with Supreme Court Precedent......................... 6

II.  The Panel Opinion Conflicts With the Decisions of the Third and Seventh Circuits. ...................................................................................... 13

III.  The Issue is Exceptionally Important............................................ 16

CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**          **Page**

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).................................................................6

*Drummond v. Robinson Township.*,
    9 F.4th 217 (3d Cir. 2021)...............................................1, 13, 14

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ..................................................1, 15

*Ezell v. City of Chicago*,
    846 F.3d 888 (7th Cir. 2017)...................................................1, 15

*Jackson v. City & Cnty. of San Francisco*,
    135 S. Ct. 2799 (2015) ...........................................................10

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
    508 U.S. 384 (1993)................................................................3

*Luis v. United States*,
    136 S. Ct. 1083 (2016) ............................................................7

*N.Y. State Rifle & Pistol Ass'n Inc. v, City of New York*,
    140 S. Ct. 1525 (2020) ..........................................................7, 9

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    597 U.S. 1 (2022).......................................1, 5, 6, 7, 8, 11, 14, 15

*Oakland Tactical Supply, LLC v. Howell Twp., Mich.*,
    No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022) ..............5

**Constitutional Provision**

U.S. CONST. amend. II.................................................................6

**RULE 35 STATEMENT**

This proceeding involves a question of exceptional importance: to what extent the plain text of the Second Amendment covers the right to train with firearms. The panel majority decided this question in a manner that conflicts with decisions of the Third and Seventh Circuits, *see Drummond v. Robinson Township*, F.4th 217 (3d Cir. 2021); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ("*Ezell I*"); *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) ("*Ezell II*") and, ultimately, the United States Supreme Court, *see District of Columbia v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). The Court should grant en banc review to address the important question presented by this case and to bring this Court's precedent in line with that of its sister circuits and the Supreme Court.

**INTRODUCTION**

Howell Township's zoning ordinance restricts the quality and quantity of firearms training that can take place in the Township. It does so by effectively banning outdoor commercial range training throughout the Township and expressly banning all commercial range training in the zoning district in which Plaintiff Oakland Tactical is located. As a result, Oakland Tactical is barred from operating its planned training facility, which would offer a broad array of firearms training, including traditional handgun, shotgun, and rifle ranges and a long-distance rifle

range with distances up to 1,000 yards.

The panel majority held that the Township's suppression of firearms training does not even warrant Second Amendment scrutiny. But as Judge Kethledge explained in his dissenting opinion, that result cannot be squared with "the Second Amendment's text as interpreted by the Supreme Court." Opinion, Doc. 40-2 at 18 (May 31, 2024) (Kethledge, J., dissenting) ("Slip Op."). As the Third and Seventh Circuits have held, and as four Justices of the *Bruen* majority have indicated, the Second Amendment necessarily encompasses the right to train with the firearms the Amendment protects. The plain text of the Second Amendment therefore covers the conduct at issue in this case. No finer-grained distinctions, such as "the circumstance of place," Slip Op. 21 (Kethledge, J., dissenting), can be drawn from the plain text. The case therefore must be resolved under *Bruen*'s historical analysis.

The panel majority's contrary reasoning, if allowed to stand, would have a deleterious effect not only on the right to train but also on other necessary incidents to the right to keep and bear arms, such as the right to acquire firearms and the right to store firearms in an accessible manner. What is more, the panel majority's reasoning necessarily imports interest-balancing back into the Second Amendment analysis by forcing courts to make distinctions at the plain text level that are not present in the plain text. "Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and

2

buried," the panel majority's opinion thus causes interest-balancing to "stalk[] [this Court's Second Amendment] jurisprudence once again." *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment). The en banc Court should grant review to ensure the application of the Second Amendment in this Circuit comports with the proper understanding of the Amendment and Supreme Court precedent.

## BACKGROUND

### I.    Factual Background

Howell Township regulates approximately 20,000 acres of unincorporated land in Livingston County, Michigan, under the Howell Township Zoning Ordinance ("Ordinance"). SAC ¶ 37, R.E.No. 44, PageID#1095–96. This Ordinance specifies permitted uses in each enumerated zoning district and "prohibit[s] any use not specifically listed." *Id.* ¶ 34, R.E.No. 44, PageID#1095; *see* Ordinance art. III, §§ 3.06, 3.07, 3.10, R.E.No. 61-2, PageID#1361–62. Oakland Tactical wants to build an outdoor rifle range with target distances up to 1,000 yards and to operate additional shotgun, rifle, and handgun ranges on a several-hundred-acre former rock quarry property in the Township's Agricultural Residential District. SAC ¶ 6, R.E.No. 44, PageID#1085–86. Howell Township does not allow the operation of a commercial firing range of any type on Oakland's land and at the time the operative complaint was filed did not permit outdoor commercial ranges in any district, *see*

3

Ordinance art. IV-XIII, R.E.No. 61-2, PageID#1367–1411, while it at all relevant times has allowed *unrestricted* shooting on private property as an accessory use throughout the Township, Def. Supp. Br., R.E.No. 97, PageID#2221. While the Township has amended its Ordinance since the outset of this litigation, all concede that Oakland still cannot operate a commercial range on its land, and Plaintiffs contend the Ordinance continues effectively to operate as a de facto ban on commercial outdoor ranges throughout the Township.

## II.    Procedural Background

Plaintiffs in this case are Oakland Tactical, as well as several individuals who desire to train at an outdoor shooting facility in Howell Township. SAC ¶¶ 7–15, 60–64, R.E.No. 44, PageID#1086–90, 1101–02. They have been frustrated in that endeavor, however, by the fact that Oakland Tactical, which would provide such a facility, was prohibited from doing so by the Township enforcing its zoning ordinance. Id. ¶¶ 46–54, R.E.No. 44, PageID#1098–100. Several Plaintiffs filed this suit on November 2, 2018, challenging the Township's de facto ban on outdoor shooting ranges as a violation of the Second Amendment. Compl., R.E.No. 1, PageID#1, 15. The remaining Plaintiffs joined the suit by amendment on July 11, 2019. *See* SAC, R.E.No. 44, PageID#1084. Following cross motions to dismiss and for summary judgment, the district court dismissed Plaintiffs' claims and denied Plaintiffs' motion for summary judgment as moot. *See* Order Granting MTD,

4

R.E.No. 84, PageID#2089.

Plaintiffs timely appealed that decision but while that appeal was pending, the Supreme Court issued its decision in *Bruen*, and this Court vacated the district court's decision and remanded with instructions to apply *Bruen*. *Oakland Tactical Supply, LLC v. Howell Twp., Mich.*, No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022).

The district court again granted Howell Township's motion to dismiss, holding that Plaintiffs' proposed course of conduct was not covered by the Second Amendment's plain text. *See* Op. & Order Addressing Suppl. Briefing and Granting Def.'s Mot. to Dismiss, R.E.No. 117, PageID#2625. Plaintiffs again timely appealed, Not. of Appeal, R.E.No. 119, and a divided panel of this Court affirmed. *See* Slip Op. 15.

## ARGUMENT

In *Bruen*, after virtually every court of appeals to address the question following *Heller* had inappropriately imported interest balancing as the often-dispositive factor in assessing a challenged law's constitutionality, the Supreme Court clarified the standard that should be applied in all future Second Amendment cases. 597 U.S. at 19. The threshold issue is one of textual interpretation: Does the challenged law restrict activity that is protected by the plain text? If yes, then the law is presumptively unconstitutional and "[t]he government must then justify its

5

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. The panel never reached the historical *Bruen* analysis in this case because it held that Plaintiffs' claim faltered at the threshold and that Plaintiffs' stated desire to train with common firearms did not even state a claim under the Second Amendment. The panel majority's decision is irreconcilable with the text of the Second Amendment, the Supreme Court's decisions in *Bruen* and *Heller*, and the decisions of other courts of appeals to have considered this question.

## I.    The Panel Opinion Conflicts with Supreme Court Precedent.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Heller*, construing this language, the Supreme Court clarified that to "keep arms" means simply to "have weapons" and "bear arms" means "carrying … weapon[s] … for the purpose of 'offensive or defensive action.' " 554 U.S. at 582–84. But *Heller* also signaled that the "plain text" of the Amendment protects more than just those activities it mentions explicitly; it also extends to protect activities that are implicit in its text. For example, the right "to bear arms implies something more than the mere keeping [of arms]; it implies learning to handle and use them in a way that makes them ready for their efficient use." *See id.* at 617–18. To train with them, in other words. Four justices have since reaffirmed this point, *see* Slip Op. 6, noting that "the right to keep a handgun in the

6

home for self-defense" has as "a necessary concomitant … the right to take a gun outside the home for certain purposes" including "to take the gun to a range in order to gain and maintain the skill necessary to use it responsibly." *New York State Rifle & Pistol Ass'n Inc. v, City of New York*, 140 S. Ct. 1525, 1541 (2020) (Alito, J., dissenting); *id.* at 1527 (Kavanaugh, J., concurring); *see also Luis v. United States*, 136 S. Ct. 1083, 1097 (2016) (Thomas, J., concurring in judgment). Thus, a majority of the Supreme Court has indicated that the right to train with firearms is necessarily implied by the right to "bear arms" and at least four justices have found it is equally implicit in the right to "keep" them as well. *See* Slip Op. 19 (Kethledge, J., dissenting). As even the panel majority admits, "at least some training is protected" by the Second Amendment. Slip Op. 6.

The problem comes in how the majority concludes that the specific training at issue here is *not* protected. Both *Bruen* and *Heller* demonstrate what should have happened next. Given that a right to train is protected by the plain text (whether by the verb "keep" or "bear," the word "infringed," or through implication), as long as what Plaintiffs wish to do is "train" with "arms," then the only limitations on the right can come from *history*. *Bruen*, 597 U.S. at 19. Once the panel finds that "some training is protected," the textual inquiry should end. Slip Op. 6. The plain text is capacious, and anything within that capacious scope is presumptively protected. As Judge Kethledge explains in dissent, questions about what training is protected that

go beyond what can be gleaned from the text "are unanswerable at step one precisely because our lodestar for that step—the Second Amendment's text—has nothing to say about them." Slip Op. 22 (Kethledge, J., dissenting).

The panel asserts that it was in fact following *Bruen*, which, in its telling, offered a narrower reading of the petitioners' proposed conduct that it then compared against the text of the Second Amendment: "[R]ather than defining the proposed conduct at the high level of generality urged by Plaintiffs—*i.e.*, 'carrying handguns'—the Court's definition incorporated the purpose and location of the plaintiffs' desired action" because it "defined the 'proposed course of conduct' as 'carrying handguns publicly for self-defense' which it found to be covered by the plain text of the Second Amendment." Slip Op. 11 (quoting *Bruen*, 597 U.S. at 32). But what the panel majority misses is that while *Bruen* may have defined petitioners' proposed *conduct* in *Bruen* as carrying firearms in public, *Bruen* did not find that activity protected by the Second Amendment because the text of the Second Amendment specifically covers carrying firearms in public. Rather, *Bruen* found the plain text implicated because that text covers carrying firearms *generally*, and "[n]othing in the Second Amendment's text draws a home/public distinction." 597 U.S. at 32. Similarly in this case, once it is granted that the plain text covers training to some extent (as the panel majority does), nothing in the plain text draws any locational distinctions, be they indoor/outdoor or agricultural/industrial, or

8

otherwise.

Justice Alito's dissent in *City of New York* elucidates the panel majority's error. There, the law at issue restricted individuals from transporting firearms from their homes in New York City to ranges outside the City. Individuals could transport firearms to ranges within the City and could train at ranges outside the City with rented firearms. So, narrowly defined, the conduct at issue was individuals training with their own firearms at ranges outside of their home jurisdiction. Justice Alito and the three other justices who joined or endorsed his dissent found that activity covered by the Second Amendment because a "necessary concomitant" of the Second Amendment right is "to take a gun to a range in order to gain and maintain the skill necessary to use it responsibly." *City of New York*, 140 S. Ct. at 1541 (Alito, J., dissenting). And because the conduct at issue involved taking a gun to a range to train, "it became incumbent on the City to justify the restrictions its rule imposes." *Id.* The plaintiffs were not required to show that the plain text somehow *specifically* covered training outside a person's city of residence. Rather, it was the *City's* burden to justify its *restriction*, and the City "point[ed] to no evidence of laws in force around the time of the adoption of the Second Amendment that prevented gun owners from practicing outside city limits." *Id.* Similarly here, because there is a right to train at a range, the Township must justify its restrictions on range training with history.

9

The panel majority's contrary approach essentially imports impermissible interest-balancing back into the Second Amendment. Without any text from which to draw distinctions, the panel's approach once again invites future courts in this Circuit to engage in an inquiry that *Bruen* has prohibited: do individuals really *need* to train in a certain location or in a certain manner? Or do individuals really *need* to store firearms in a certain manner to ensure ready access in case of conflict? *Compare* Slip Op. 10 (reasoning that text not implicated by safe storage requirement), *with Jackson v. City & Cnty. of San Francisco*, 135 S. Ct. 2799, 2801 (2015) (Thomas, J., dissenting from denial of certiorari) (reasoning that there is "no question" that San Francisco's safe storage requirement "burdens the core of the Second Amendment right").

Tellingly, the panel majority essentially concedes that it is seeking to regain some of the flexibility the tiers of scrutiny analysis had allowed. The panel majority reasons that taking a broad view of the Second Amendment's text may have made sense when "the Second Amendment right could be balanced against an analysis of the rationale and effect of the regulation" under the pre-*Bruen* interest balancing regime. Slip Op. 10. But after the Supreme Court invalidated the balancing method, the panel majority asserts, there is greater need to define the Second Amendment's plain text "with greater attention and precision" because once it is found that the conduct at issue is protected by the plain text, "no weighing is permitted at *Bruen*'s

second step." *Id*. But again if, as is the case here, there *is* nothing in the plain text to make more precise distinctions between protected and unprotected activity, the necessary result will be importing interest balancing back into the analysis, which *Bruen* has expressly warned against. *See* 597 U.S. at 29 n.7. Any limits on the sweep of the Second Amendment's plain text must be derived from history, not from artificially limiting that sweep through interest balancing.

While the plain text of the Second Amendment covers Plaintiffs' proposed course of conduct even as defined by the panel majority, we note that the panel majority defines that conduct too narrowly. First, Plaintiffs do not seek to "train at a commercial facility *anywhere* in the Township." Slip Op. 13 (emphasis added). Rather, Plaintiffs seek to train at an outdoor commercial facility *somewhere* in the Township, and particularly at the ranges that Oakland Tactical would like to operate. *See* SAC ¶¶ 6, 11, 56, R.E.No.44, PageID#1085–86, 1088–89, 1100. And although the panel majority claims that "Plaintiffs have not alleged that the Township…would have prohibited Oakland Tactical from building a range in the districts allowing recreational facilities," *Id.* at 14, that is not the case. Plaintiffs have consistently alleged that the original ordinance operated as a de facto ban on outdoor ranges in Howell Township. *See, e.g.*, Appellants' Opening Brief, Doc. 14 at 6–7 (Apr. 24, 2023). And a ban on outdoor ranges is a ban on effective long gun training. *See* SAC ¶ 14, R.E.No. 44, PageID#1090 (alleging that Plaintiff Dimitroff can only practice

with a handgun because he only has access to an indoor range). The Township has never adequately explained how the subsequent amendments to the zoning ordinances would operate any differently to permit outdoor ranges in the Township that would allow effective long gun training. *See* Appellants' Reply, Doc. 25 at 6 (June 28, 2023). Oakland Tactical does not wish to operate *anywhere* in the Township, only at a safe location with adequate outdoor space where other commercial activities are permitted to occur. Oakland's extensive former rock quarry property fits that description. *See id.* at 6–7. Second, Plaintiffs' desire is not limited to "long-distance firearms training." Slip Op. 13. Rather, they have alleged a desire to participate in all forms of shooting activities at the proposed range facility, including shooting *up to* 1,000 yards. *See id.* at 9. It is a bizarre effect of the majority's approach that a single allegedly unprotected use for the range in question (target practice with rifles at distances of 1,000 yards) means that Plaintiffs have not even stated a claim under the Second Amendment when nothing in the majority opinion's reasoning suggests that training at shorter ranges (which Plaintiffs also wish to do) is even arguably outside the Amendment's scope.

In any event, properly applying *Bruen*, the panel majority's improper characterization of Plaintiffs' proposed course of conduct should not make a difference. Even under the panel majority's understanding of the case, Plaintiffs still wish to train with firearms, and therefore their activities fall within the scope of

12

"training" protected by the Second Amendment. The majority avoids this result only by requiring "close[] tether[ing]" to the Amendment. *Id.* at 10. But it is hard to imagine *any* training claim *any* plaintiffs could bring that would overcome this hurdle, absent a flat, absolute ban on training. The panel majority holds that considerations of place and activity ("a specific place" and "1,000 yard" target practice) must be considered at the textual level, and then faults Plaintiffs because the Second Amendment was limited in its view to "train[ing] with firearms for proficiency in case of confrontation" and confrontation required neither "a specific place" nor 1,000-yard distances. *Id.* at 14. But that is not the fault of the text. The majority reads that silence to mean that the Second Amendment does not *extend* to those specific instances of training. That approach flips *Bruen* on its head. It reads into a lack of detail in the Second Amendment an implicit restriction that activities not specifically protected can be banned. But that is not the proper way to analyze Second Amendment claims. The panel majority is irreconcilable with *Bruen* and *Heller* and should be corrected by the en banc Court.

## II.    The Panel Opinion Conflicts With the Decisions of the Third and Seventh Circuits.

In addition to conflicting with Supreme Court precedent, the panel decision creates a split with the decisions of the Third and Seventh Circuits. In *Drummond*, just as in this case, a township zoning restriction precluded the plaintiff—a would-be shooting range operator—from operating a shooting range on a parcel of land. 9

F.4th at 224. In *Drummond*, as here, shooting was an otherwise lawful use for the land, but *commercial* shooting was prohibited by the zoning ordinance. *Id.* at 227. And in *Drummond*, as alleged (but not conceded) here, a particular type of shooting barred in the plaintiff's district was allowed in other zoning districts. *Id*. at 224. But unlike here, in *Drummond* the panel of the Third Circuit concluded that the Second Amendment's plain text covered the activity in question because that activity consisted of training with firearms protected by the Second Amendment, and the right to keep and bear arms protected by the Second Amendment "implies a corresponding right to acquire and maintain proficiency" with protected arms. *Id.* at 227 (quoting *Ezell I*, 651 F.3d at 704). The court then proceeded to analyze history to determine whether any historical analogs justified the township's regulations on training.

The majority in this case scarcely acknowledged *Drummond*, suggesting only that its reasoning was emblematic of a looser analysis that might have been acceptable pre-*Bruen* when interest balancing would ultimately dispose of most cases anyway. Slip Op. 10. But while it is true that *Drummond* went on to apply a tiers of scrutiny analysis, *Bruen* in no way undermined *Drummond*'s analysis of text and history. To the contrary, *Bruen* explained that "step one of the [formerly] predominant framework"—the text-and-history step—was "broadly consistent with *Heller*," 597 U.S. at 19, and it cited *Drummond* approvingly when explaining how

14

to engage in "analogical reasoning under the Second Amendment," *id.* at 30. *Bruen* nowhere suggests that *Drummond* was wrong even to get to reasoning by analogy. Therefore, nothing in *Bruen* mitigates the square split the panel majority has created with the Third Circuit.

The panel majority's decision also conflicts with the decisions of the Seventh Circuit addressing firearms training. In *Ezell I*, the court analyzed the text and history of the Second Amendment and concluded that both the plain text of the Second Amendment and the Supreme Court's decision in *Heller* supported the conclusion that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use." 651 F.3d at 704. And when Chicago replaced its flat ban on ranges with a zoning restriction that prohibited the operation of firing ranges in wide swaths of the city where other commercial and recreational activity was permitted, the Seventh Circuit *again* held that the Second Amendment was implicated by the restriction. *See Ezell II*, 846 F.3d at 893. This was despite the fact that the new zoning ordinance permitted training in certain manufacturing districts. *Id.* at 890. Had the Seventh Circuit applied the panel's "anywhere in the [city]" reading of Plaintiffs' claims to *Ezell*'s, the result would have been different. This Court should grant en banc review to resolve this division among the courts of appeals.

15

## III.    The Issue is Exceptionally Important.

This case merits en banc review wholly apart from the division of authority it creates or its conflict with the precedent of the Supreme Court. Were this case merely about the *misapplication* of the *Bruen* decision—and to be clear, it is about much more than that—it would still merit review because the panel's twisting of the threshold textual issue threatens to inappropriately narrow the scope of the Second Amendment in other cases in this Circuit. Applying the panel majority's approach would risk cutting off at the threshold a challenge to *any* law that does not flatly proscribe conduct coextensive with the full reach of the Second Amendment's text. And the panel majority's approach necessarily imports interest-balancing back into the Second Amendment's analysis.

Following *Heller*, for nearly fourteen years the courts of appeals misapplied Supreme Court precedent and failed to adequately protect Second Amendment rights. If this Court does not step in and correct the errors in the panel opinion, history may well repeat itself.

## CONCLUSION

The Court should grant rehearing en banc.

Dated: June 14, 2024

Respectfully submitted,
/s/ *Peter A. Patterson*
PETER A. PATTERSON
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, N.W.

Washington, D.C. 20036
(202) 220-9600
ppatterson@cooperkirk.com
*Counsel of Record*

JOSEPH G.S. GREENLEE
GREENLEE LAW, PLLC
PO Box 4061
McCall, ID 83638
(208) 271-2494
joseph@greenlee.law

MARTHA A. DEAN
LAW OFFICES OF MARTHA
A. DEAN, LLC
144 Reverknolls
Avon, CT 06001
(860) 676-0033
mdean@mdeanlaw.com

ROGER L. MYERS
MYERS & MYERS, PLLC
915 N. Michigan Ave., Ste. 200
Howell, MI 48843
(517) 540-1700
rmyers@myers2law.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Petition complies with the requirements of Federal Rule of Appellate Procedure 32(a) and 35(b)(2). The Petition is prepared in 14-point Times New Roman font, a proportionally spaced typeface; it is double-spaced; and it contains 3,892 words (exclusive of items listed in Rule 32(f)), as measured by Microsoft Word.

/s/ *Peter A. Patterson*
PETER A. PATTERSON
*Counsel for Appellants*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Appellate Procedure 25(d), I certify that on June 14, 2024, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ <u>Peter A. Patterson</u>
PETER A. PATTERSON
*Counsel for Appellants*
